## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARAGAN KELLY, et al., | : | |
| Plaintiffs, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 19-2819** |
| | : | |
| BRISTOL TOWNSHIP | : | |
| SCHOOL DISTRICT, et al., | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                           **December 6, 2019**

### MEMORDANUM

This action arises from a regrettable incident that occurred after a basketball game between rival high schools during which Plaintiff Karagan Kelly found herself trapped in a brawl and severely injured. Ms. Kelly and her mother now bring Fourteenth Amendment state-created danger claims under 42 U.S.C. § 1983 against the Bristol Township School District and Harry S. Truman High School, together with state law tort claims. They also assert a state law tort claim against a John Doe Defendant, the student who allegedly attacked Kelly during the altercation. Although the injuries alleged are serious, the conduct of the School District cannot be said to rise above the level of negligence. I am therefore compelled to grant Defendants' Motion to Dismiss Plaintiffs' claims under Section 1983, and I decline to exercise supplemental jurisdiction over the remaining state-law claims.

## I.      BACKGROUND

Ms. Kelly attends Bensalem High School. Compl. ¶ 12. Bensalem's student-athletes compete against students from Harry S. Truman High School, with whom they have a rivalry. *Id*. On at least one occasion prior to the incident in which Kelly was injured, the rivalry between

Bensalem and Truman has led to violence. Specifically, after a boys' varsity basketball game in December 2016, students from both schools became involved in a fight that required the presence of police and generated coverage both in local media and online.[1] Compl. ¶ 14.

On January 31, 2018, more than a year after the earlier incident, Kelly attended a boys' varsity basketball game between the two schools held at Truman. Compl. ¶ 20. During the game, Kelly witnessed students in the stands from both schools engaging in a series of verbal confrontations with one another. Compl. ¶¶ 21-22. After the game ended, and with tensions still high, Kelly and the other student attendees were required to leave the gymnasium at the same time through a single exit and wait in a designated pickup area. Compl. ¶¶ 23-25.

As Kelly waited in the pickup area "along with several hundred other students of both schools," a fight broke out, and she was punched and kicked while trying to escape the altercation. Compl. ¶ 28. At some point, Kelly crawled out of the group of fighting students and, as she stood up, she was struck in the head and face by Defendant John Doe, causing her head to strike a nearby wall. *Id.* The melee left Kelly with a traumatic brain injury as well as a badly lacerated fingernail on her left hand. Compl. ¶¶ 30-31.

Four of five counts in the Complaint address the liability of the School District. The remaining count involves only the John Doe assailant, who has not been identified.

---

[1] Notably, the Complaint does not allege where the 2016 incident occurred. This omission makes the most reasonable inference from the Complaint that the prior altercation occurred at Bensalem High School, not Truman. Such an inference also follows from Plaintiffs' allegation that following the incident, "Bensalem High School took measures to ensure said incident would not be repeated and that no students would be harmed as a result of similar incidents in the future." Compl. ¶ 16.

## II.    STANDARD OF REVIEW

In this circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are

governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203,

210 (3d Cir. 2009).

## III.    DISCUSSION

Preliminarily, Defendants argue Plaintiffs have improperly named Harry S. Truman High

School as a party because a school is not a separate entity from the district of which it is a part,

*Hamilton v. Hite*, 2017 WL 3675398, at *5 (E.D. Pa. Aug. 21, 2017) (Pratter, J.); *Estate of*

*Massey v. City of Phila.*, 118 F. Supp. 3d 679, 699 (E.D. Pa. 2015) (Quiñones Alejandro, J.),

which plaintiffs concede.  Pls.' Opp. Br., ECF 6, at 9.  I will, therefore, treat the claims asserted

against Truman as merged with those against the District and analyze them accordingly.

### A.    Fourteenth Amendment Claims

At its core, Plaintiffs' Complaint rests upon two broad assertions.  The first is that the exit

policy in place after the basketball game on the night Kelly was injured placed students of rival

schools in close proximity, thereby increasing the risk of violence generally and harm to Kelly in

particular.  The second contention is that the District knew about the previous fight and failed to

mitigate the risk that Kelly and other students might be harmed at a future event between rival

schools.

Plaintiffs allege that the District violated Kelly's Fourteenth Amendment substantive due

process rights to bodily autonomy.  Although the Supreme Court has recognized that the

Amendment's due process clause protects such a right, it has also held that municipalities have

no affirmative duty to protect people from violence at the hands of private individuals.

*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989).  The Third

Circuit has observed that *DeShaney* therefore "stands for the harsh proposition that even though

state officials know that a person is in imminent danger of harm from a third party, the

Fourteenth Amendment imposes upon those state officials no obligation to prevent that harm."

*Horton v. Flenory*, 889 F.2d 454, 457 (3d Cir. 1989).

Nevertheless, *DeShaney* acknowledged that, under certain circumstances, a state actor

might incur an affirmative duty to protect individuals from private violence, including when a

special relationship exists between the state and plaintiff.  *Id*. at 199-200.  The Third Circuit also

recognizes a "state-created danger" exception to the general rule.  *Kneipp v. Tedder*, 95 F.3d

1199, 1205 (3d Cir. 1996).

### 1.	*State-Created Danger Claim (Count I)*

To state a viable § 1983 claim under the state-created danger exception, a plaintiff must

allege facts substantiating each of the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks

omitted).

In Count I of the Complaint, Plaintiffs invoke the state-created danger exception by

alleging that the District caused the circumstances leading to Kelly's injuries when it "enabled

and created the venue for students of rival high schools to be in close proximity to one another."

Compl. ¶ 35. Plaintiffs reformulate this allegation slightly in their Opposition Brief to state that Kelly's injuries resulted from the school's exit policy after the basketball game, which required all attendees to exit through a single door and wait in a designated area for pickup. ECF 6, at 11.

Defendants argue that Plaintiffs have failed to satisfy all four elements required to state a claim, and they advance strong arguments as to each. But there is no need to look beyond the first two elements to conclude that the facts here will not suffice to establish a constitutional violation.

Under the first element, to establish foreseeability, the plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 171 (3d Cir. 2017) (citing *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008)) (internal quotation marks omitted). The "directness" inquiry is inherently fact-sensitive and requires courts to distinguish between "harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." *Phillips*, 515 F.3d at 239 (3d Cir. 2008) (internal citation omitted).

In a general sense, an altercation between high-spirited teenagers at a sporting event is always foreseeable. But I am not persuaded that the state action at the center of the Complaint— providing a single means of exit—materially enhances the foreseeability of violent acts. More importantly, any relationship between the single exit policy and the assault on Kelly is, at best, attenuated rather than direct. This is not a case where a student was targeted or the subject of repeated assault; the attack was random. And given the narrowness of the state-created danger doctrine, courts have denied liability even where there was an allegation of repeated attacks

against a specific student. *See, e.g.*, *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) (en

banc).

Turning to the second element—culpability—whether an act shocks the conscience is

evaluated on a case-by-case basis and depends, in part, on the amount of time within which the

state actor must make its judgment. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). To that

end, the Third Circuit has identified three tiers of culpability in state-created danger claims:

> In hyperpressurized environments requiring a snap judgment, an
> official must actually intend to cause harm in order to be liable. In
> situations in which the state actor is required to act in a matter of
> hours or minutes, we require that the state actor disregard a great
> risk of serious harm. And where the actor has time to make an
> unhurried judgment, a plaintiff need only allege facts supporting an
> inference that the official acted with a mental state of deliberate
> indifference.

*Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (cleaned up).[2]

On the record here, I conclude that the applicable level of culpability is deliberate

indifference because the facts as pled do not show the District was operating in a

"hyperpressurized environment," nor required to act "in a matter of hours or minutes." *Id*. The

Third Circuit embraces an objective standard, so that "deliberate indifference might exist without

actual knowledge of a risk of harm when the risk is so obvious that it should be known." *L.R. v.*

*Sch. Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016) (internal quotation marks omitted).

Nonetheless, it has also emphasized that actions demonstrating mere negligence do not rise to the

level of deliberate indifference and are therefore not enough to shock the conscience. *Sanford*,

456 F.3d at 311.

---

[2] This opinion uses (cleaned up) to indicate that extraneous, non-substantive information—such as internal quotation marks, alterations, and citations—has been omitted from quotations. *See, e.g.*, *United States v. Steward*, 880 F.3d 983, 987 n.3 (8th Cir. 2018), reh'g denied (June 12, 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

The record here does not reflect that the risk of an assault against Kelly was so obvious that it should have been known. Plaintiffs rely upon a single incident, more than a year before, that began *in the stands*, not during the exit process after the game, and certainly not outside in the waiting area. Compl. ¶ 14. As noted above, the most reasonable inference from the Complaint is that the first incident occurred at the rival high school. Plaintiffs do not allege that Kelly was targeted, nor do they plead that school officials were made aware, whether through social media or by some other means, of rumors within the student body that any violence was planned in advance. In fact, the allegations as pled reflect that the incident occurred spontaneously, such that school officials were unaware of Kelly's peril. The facts presented here do not support an inference of deliberate indifference, and there is nothing about the nature of Defendants' conduct—the choice of an exit plan—that is intrinsically outrageous.

Indeed, the Court of Appeals has declined to impose liability under far more compelling facts. *See, e.g.*, *Scheiber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003) (police not liable for failure to breach apartment door in response to neighbor's report of screaming inside); *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) (school counselor not liable for student suicide despite sending him home following screening). Plaintiffs cite my decision in *K.M. v. Chichester Sch. Dist.*, 152 F. Supp. 3d 412 (E.D. Pa. 2015) as an example of conduct by a school district that shocks the conscience. My conclusion there turned on the fact that the plaintiff was a special needs student under the direct care and supervision of school district personnel while in transit, whose autism had a "bearing on both cause and effect, encompassing not only the likelihood that such students will find themselves in need of protection, but also the enhanced potential for harm that can follow if it is not provided." *Id.* at 418. And even in that context of

7

extreme vulnerability, I described the issue as a close one under the prevailing legal standard. *Id.* at 417.

The state-created danger doctrine remains "a narrow exception to the general rule that the state has no duty to protect its citizens from private harms." *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013); *accord Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 662 (E.D. Pa. 2017). At best, Plaintiffs could argue that the history between the two schools made the District's exit plan negligent. And although principles of tort law inform jurisprudence under § 1983, they cannot be invoked to constitutionalize the law of torts. *See Howell v. Cataldi*, 464 F.2d 272, 278 (3d Cir. 1972). Plaintiffs' state-created danger claim must therefore be dismissed.[3]

### 2. *Liability under Monell*

In Count II of the Complaint, Plaintiffs also contend that the District is directly liable for creating and implementing the exit policy because those actions demonstrated the District's failure to train, monitor, and supervise employees. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). But a governmental actor cannot be liable for fostering or failing to prevent a deprivation of rights unless an underlying deprivation occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (dismissal of § 1983 claims against Mayor required dismissal of *Monell* claims based upon the same factual allegations of unlawful conduct.)

---

[3] Defendants also challenge the availability of punitive damages against the District. Def. Mot. to Dismiss, ECF 4, at 16-17. Because the claims against the District are being dismissed, I need not reach this issue.

Because I have already held that Plaintiffs have failed to state a § 1983 claim for deprivation of Kelly's Fourteenth Amendment rights under a state-created danger theory, it follows that their *Monell* claims based upon the same conduct must also be dismissed.

**B.     State Law Claims**

With no surviving federal claims, I decline to retain supplemental jurisdiction over the state law tort claims that Plaintiffs assert in their Complaint. 28 U.S.C. § 1367(c)(3). If a district court has already dismissed all the claims invoking its original jurisdiction, it "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citations omitted).

On the record here, there is no affirmative justification supporting the exercise of supplemental jurisdiction over the remaining state law claims. This case is at an early stage, the parties are all Pennsylvania citizens, and the remaining issues are strictly ones of state law. I will therefore dismiss the case in its entirety, without prejudice to the refiling of the supplemental state law claims in state court.

**IV.     CONCLUSION**

The assault upon Ms. Kelly is most unfortunate, but the circumstances under which it occurred do not give rise to a federal claim. Under the controlling legal standard, I must grant Defendants' motion to dismiss. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge